O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEY LYNN WALLACE, <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br> Defendant. | Case No. 5:16-cv-02064-KES <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Kimberley Lynn Wallace ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff applied for DIB on May 27, 2014, alleging disability commencing May 1, 2012. Administrative Record ("AR") 173-74. An ALJ conducted a hearing on March 8, 2016, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 41-88.

On April 13, 2016, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 20-40. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of obesity; chronic abdominal pain with diverticulosis and celiac disease; and Lyme disease. AR 25. The ALJ assessed that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of "light work" as defined in 20 C.F.R. § 404.1567.[1] AR 30. Based on this RFC and the testimony of a vocational expert, the ALJ found that Plaintiff could return to her past relevant work as a project control specialist and project manager. AR 35. Therefore, the ALJ concluded that Plaintiff is not disabled. Id.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. … [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but the ALJ need not consider properly rejected evidence. Batson v. Comm'r of SSA, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.

## ISSUES PRESENTED

Plaintiff raises one claim of error: that the ALJ did not properly evaluate the opinion of her treating physician, Dr. Daniel Louvet. Dkt. 22, Joint Stipulation ("JS") at 4.

Plaintiff points to a Physical Residual Functional Capacity Questionnaire completed by Dr. Louvet on March 25, 2015 (the "Questionnaire"). JS at 4, citing AR 541-45. In the Questionnaire, Dr. Louvet expressed multiple extreme opinions that are inconsistent with the ALJ's determination that Plaintiff can perform the full range of light work. For example, Dr. Louvet opined that:

• Plaintiff could only sit or stand/walk for "less than 2 hours" each workday (AR 543);

• Plaintiff could "rarely" lift and carry 10 pounds (id.);

| | |
|---|---|
| 1 | • Plaintiff would need to take breaks every hour lasting thirty minutes (id.); |
| 2 | • Plaintiff would need to elevate her legs flat 100% of any work time spent |
| 3 | sitting (id.); |
| 4 | • Plaintiff could never climb stairs (AR 544); |
| 5 | • Plaintiff could only spend 5% of each workday using her hands, fingers and |
| 6 | arms to perform grasping, fine manipulation, and/or reaching (id.); |
| 7 | • Plaintiff's "pain or other symptoms" would "constantly" be "severe enough |
| 8 | to interfere with attention and concentration needed to perform even simple work |
| 9 | tasks" (AR 542); and |
| 10 | • Plaintiff could not tolerate "even 'low stress' jobs" (id.). |
| 11 | The ALJ gave Dr. Louvet's Questionnaire no weight. AR 34. |

## IV.

## THE ALJ PROPERLY DISCOUNTED DR. LOUVET'S OPINIONS.

### A. Applicable Law.

There are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

However, "[t]he ALJ need not accept the opinion of any physician, including

a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

**B.     The ALJ's Analysis of Dr. Louvet's Questionnaire.**

In considering Dr. Louvet's opinions, the ALJ provided the following three reasons for giving them no weight:

> The undersigned has also considered the opinion of the claimant's treating doctor, Daniel Louvet, M.D. dated March 25, 2015, which indicated the claimant was incapable of performing even sedentary work and would miss more than 4 days of work per month [cite]. The undersigned notes that this opinion was rendered after the claimant's date last insured. Because **[1]** it is outside of the relevant period at issue, the undersigned has given this opinion no weight. However, even if this opinion were rendered during the relevant period at issue, the undersigned notes that **[2]** it appears to be primarily based off the claimant's subjective complaints as there is no clinical or diagnostic evidence supporting the overly restrictive assessment and Dr. Louvet indicates in the form that he based his statements on the claimant's statements [cite]. Moreover, **[3]** this opinion is also inconsistent with the claimant's treatment records, which show minimal and routine treatment with no evidence of physical limitations.

AR 34.

1  **C.  Substantial Evidence Supports All Three of the ALJ's Reasons for**
2  **Discounting Dr. Louvet's Questionnaire.**
3  **1. Reason One: The Questionnaire was completed after Plaintiff's last**
4  **date of insurance ("LDI").**

"[R]eports containing observations made after the period for disability are relevant to assess the claimant's disability. … It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988). The Ninth Circuit has specifically held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester, 81 F.3d at 832 (holding that the ALJ erred in rejecting an examining psychologist's opinion that was completed "several months" after the claimant's LDI, because the opinion's timing "would be a reason to give [it] less weight" but "not a reason to give preference to the opinion of a doctor who has *never* examined the claimant") (emphasis in original).

That said, an "ALJ may properly consider the remoteness of a medical evaluation in weighing a medical opinion." Perkins v. Colvin, 16-cv-215, 2016 U.S. Dist. LEXIS 129892, at *22 (W.D. Wash. Aug. 30, 2016). "Remoteness is most relevant where the medical opinion is based entirely on an examination that is outside the relevant period under consideration." Id. This means that an ALJ may entirely "disregard" a medical opinion rendered so far after the LDI that it is "reasonably" considered too "remote[]" to have probative value. Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984) (ALJ properly disregarded opinion of treating physician who examined claimant a year and a half after the relevant period).

The ALJ may also disregard post-LDI medical opinions that describe a deterioration in the claimant's condition after the covered period. Smith, 849 F.2d at 1225; see also Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372,

1377 (9th Cir. 1979) (new evidence "was of extremely doubtful relevance because it was based on an examination eight months after [claimant's] insured status"); Martin v. Chater, 94-35804, 1995 U.S. App. LEXIS 36201, at *4-5 (9th Cir. Dec. 4, 1995) (ALJ properly disregarded medical opinion based on exam conducted six months after claimant's insured status expired and that was controverted by an earlier opinion); Chavolla v. Colvin, 13-cv-3943-RNB, 2014 U.S. Dist. LEXIS 32132, at *5-6 (C.D. Cal. Mar. 11, 2014) ("Dr. Lane's opinions from July and September 2009 were not probative evidence of plaintiff's limitations during the earlier, relevant period of June 27, 2007, to May 20, 2009…."); Clark v. Astrue, 08-cv-07398-MLG, 2009 U.S. Dist. LEXIS 74125, *14-15 (C.D. Cal. Aug. 20, 2009) (ALJ properly "rejected" treating physician's letter written eight months after LDI indicating RSD prevented Plaintiff from using his right arm because it was not based on "any objective findings concerning Plaintiff's RSD" from the insured period); Mitchell v. Astrue, 06-cv-1808, 2008 U.S. Dist. LEXIS 11982, at *30-31 (E.D. Cal. Feb. 15, 2008) (ALJ properly gave less weight to opinions from January and April 2004 where the claimant's LDI was March 31, 2003).

The parties agree that Plaintiff's LDI was December 31, 2014. JS at 5, 9. Dr. Louvet completed the Questionnaire approximately three months later on March 25, 2015. AR 545. He indicated that he had treated Plaintiff "once per month for at least 15 months," such that his treating relationship covered 2014 when Plaintiff was insured. AR 541.

The three-month gap between Plaintiff's LDI and the Questionnaire is comparable to the six-month and two-month lapses found long enough to render medical opinions less probative in Martin and Chavolla. While Dr. Louvet identifies himself as having had a treating relationship with Plaintiff prior to her LDI, neither party cited to any treatment records from Dr. Louvet that are part of the record on appeal other than a medical history that Dr. Louvet conducted in March 2015 in connection with Plaintiff's "disability paperwork." AR 450-453.

Thus, except for this limited history, there is no evidence cited by either party concerning any tests or examinations that Dr. Louvet personally performed. Further, although it appears that Dr. Louvet may have practiced at the same clinic (i.e., Riverside County Regional Medical Center, Moreno Valley) as other practitioners who evaluated Plaintiff (see AR 450), there are no records reflecting his participation in her care at any time other than in connection with the March 2015 Questionnaire. Given the lack of evidence about his treatment of Plaintiff prior to her LDI, the ALJ did not err in concluding that his post-LDI Questionnaire was not entitled to probative weight.

> **2. Reason Two: The Questionnaire appears to be primarily based on Plaintiff's subjective complaints.**

On the first page of the Questionnaire, Dr. Louvet identified Plaintiff's diagnosis as "chronic abdominal pain" and "back pain." AR 541. He said she experiences "episodes once per month" and "when they are severe, pain is daily." Id. Under "clinical findings and objective signs," he listed a 2013 CT scan that showed diverticulosis. Id. He reported that Plaintiff is taking Tramadol for pain and denies any side effects. Id.

Under symptoms, after listing "abdominal pain" which is consistent with the other information on the Questionnaire's first page, Dr. Louvet wrote, "Patient states she has cognitive issues; she states 'can't think straight;' hand tremors and dropping items." Id. Thus, Dr. Louvet expressly linked Plaintiff's cognitive issues and hand tremors to her subjective complaints. This would appear to be the basis of his later responses to Question 13 (regarding limitations on attention and concentration) and Question 15m (regarding limitations on handling and reaching), even though he did not state that those responses were based on Plaintiff's self-reporting, because those limitations have no apparent link to episodic abdominal pain. AR 542, 544.

For Question 14 ("To what degree can your patient tolerate work stress?"),

Dr. Louvet indicated that his answer ("Incapable of even 'low stress' jobs") is "per the patient's answer." AR 542. Plaintiff's self-reported inability to handle even low levels of job-related stress may also be his reason for stating that Plaintiff would need 30-minute breaks every hour and miss more than four days per month. AR 543-44.

For Question 17, Dr. Louvet wrote, "symptoms have been ongoing for over 2 years," referring to a time that predated his treating relationship with Plaintiff and thus necessarily relying on information not based on his own clinical observations. AR 545.

Given that the Questionnaire (1) expressly states multiple times that Dr. Louvet relied on Plaintiff's subjective complaints, (2) sets forth limitations that appear unrelated to episodic abdominal pain (e.g., inability to climb stairs; reaching limited to 5% of time), (3) includes recommendations not found in any treatment records (e.g., must elevate legs 100% of time spent sitting), (4) is inconsistent with Plaintiff's treatment records (see AR 32, contrasting records that Plaintiff has "normal" range of motion and muscle strength with Plaintiff's reported difficulties performing even "normal" exertional activities), and (5) mirrors many of Plaintiff's self-reported symptoms in her Adult Function Report (cf., cannot sit/stand for more than 15 minutes [AR 186]; cannot stand for more than 10 minutes [AR 542]), substantial evidence supports the ALJ's conclusion that Dr. Louvet's responses to the Questionnaire were based primarily on Plaintiff's subjective complaints.

**3. Reason Three: The Questionnaire is inconsistent with Plaintiff's record of minimal and routine treatment.**

The ALJ explained his reasons for concluding that Plaintiff had received "minimal and routine" treatment, as follows:

> [C]laimant has not generally received the type of medical treatment one would expect for a totally disabled individual, as evidenced by relatively infrequent trips to a doctor for the allegedly

disabling impairments and gaps in treatment. Even when the claimant has received treatment, that course of treatment has been essentially routine and conservative in nature, primarily in the form of medications. The lack of more aggressive treatment, such as surgical intervention or even a referral to a specialist, suggests the claimant's limitations are not as severe as alleged. It is also noted that her own treating doctor did not feel the need to even send her to a GI specialist (Ex. 1F, p. 80[2]).

Moreover, the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms, which is inconsistent with her allegations of disabling abdominal issues. (Exs. 1F, pp. 14, 63, 79 & 6F, pp. 31, 84[3]).

AR 31-32.

In attacking this reason, Plaintiff focuses on her medical records concerning abdominal pain. JS at 7. Plaintiff does not address the fact that the Questionnaire opines that Plaintiff has limitations apparently unrelated to abdominal pain (e.g., limitations grasping items or handling job stress) nor does Plaintiff discuss her

---

[2] This May 2013 record states, "Explained to pt that at this point a referral to GI is not necessary. She agreed." AR 346.

[3] AR 280 ("pt state her pain is well now that she is taking her meds"); AR 329 ("improve with Norco" and "episodes of severe abdominal pain which happens once or twice a month"); AR 345 ("[s]tates abd discomfort has improved" and "crampy pain for about 2 yrs, but this comes on about 2x/yr. … Norco helps it."); AR 454 ("Here for tramadol refill" and "Currently her pain is 3/10"); AR 507 ("pain is improved currently on Tramadol" and "Abd pain 3/10").

treatment records, if any, for such conditions.

Even as to abdominal pain, Plaintiff's treatment records from 2014 (i.e., the year before her LDI when Dr. Louvet treated her) show only episodic pain and/or pain controlled below a disabling level by Tramadol:

- <u>1/2014</u>: Plaintiff was "[n]egative for abdominal pain" and reported a pain level of 0/10. AR 280-81. She was taking Tramadol. AR 282.

- <u>3/2014</u>: Again, Plaintiff reported pain at 0/10. AR 277.

- <u>7/2014</u>: Plaintiff reported pain at 5/10, but the health care provider noted she was "[n]egative for abdominal pain" and "back pain." AR 268. Plaintiff was described as having "[n]ormal range of motion" and "muscle strength." AR 269. She was still taking Tramadol "as needed." AR 270.

- <u>11/2014</u>: Plaintiff reported pain at 6/10. AR 375. The health care provider noted tenderness in her epigastric region (i.e., central abdomen) and "episodes of epigastric pain followed by cramping and diarrhea." AR 375-76. Plaintiff reported these symptoms occurring "every 2-3 months …." AR 375.

Approximately one year later (and post-LDI), Plaintiff reported that "her abdominal pain is improved currently on [T]ramadol" and "adb. pain 3/10." AR 554. At the hearing in March 2016, Plaintiff testified that Tramadol helps with her pain "[w]hen it's not a severe attack." AR 61. She testified that sometimes she takes 3 Tramadol doses a day, and has been doing so since 2014. AR 62.

The ALJ did not err in concluding that this history of pain and pain management is inconsistent with total disability, as opined by Dr. Louvet in the Questionnaire. <u>See</u>, e.g., <u>Kelly v. Colvin</u>, 15-cv-06154-KES, 2016 U.S. Dist. Lexis 124261, at *11 (C.D. Cal. Sept. 13, 2016) (upholding ALJ's determination that treating consisting of "physical therapy and medications such as Tramadol, Naproxen, Ultram, Hydrocodone, and Ibuprofen" was conservative); <u>Medel v. Colvin</u>, 13-cv-2052-JPR, 2014 U.S. Dist. LEXIS 159933, at *27 (C.D. Cal. Nov. 13, 2014) (affirming AL's characterization of claimant's treatment as conservative

where he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain"); Morris v. Colvin, 13-cv-6236-OP, 2014 U.S. Dist. LEXIS 77782, at *12 (C.D. Cal. June 3, 2014) (finding that ALJ permissibly discounted plaintiff's credibility in part because plaintiff received conservative treatment consisting of use of TENS unit and Vicodin); Jimenez v. Colvin, 12-cv-01676-JEM, 2013 U.S. Dist. LEXIS 88614, at *14 (C.D. Cal. June 24, 2013) (upholding ALJ's determination that treating "consisting of Tramadol and over-the-counter Motrin" was conservative); Walter v. Astrue, 09-cv-1569-AGR, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted claimant's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection).

## IV.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: August 31, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge